## JOHN B. RICHMAN *vs.* THOMAS LIPPINCOTT.

H. R., by his last will and testament, devised certain lands to I. R., "during his life, and then to the heirs of his body forever." On the third day of June, 1799, I. R. conveyed the premises to I. H. and W. M., by deed of bargain and sale, with covenant of warranty and covenant for further assurance. He also executed to the grantees a bond conditioned that he would suffer a common recovery, whereby the entailment of the premises should be broken, and a good title in fee simple vested in the grantees. On the 12th of June, 1799, an act was passed abolishing fines and recoveries. H. and M. divided the land, and M. conveyed his share to W. H., April 29th, 1806. On the 8th of June, 1806, a special act was passed to authorize. I. R. to suffer a common recovery. He then executed a deed tripartite with J. M. W., as the recoverer, and C. E., as the tenant to the

Richman v. Lippincott.

*precipe*, reciting that H. and M. had reconveyed the whole premises to him. Judgment of recovery was rendered September 2d, 1806, and on the 13th, I. R. conveyed the whole premises to H. and M. in fee simple. It did not appear that W. H. ever reconveyed to M. or that he had possession of the premises previous to the recovery. W. H., and those claiming under him, occupied the premises from March, 1807, to the commencement of this suit, a period of over forty years.

2. *Held*, that the facts warranted the presumption of a surrender by W. H. to M., which enabled M. to make such surrender to I. R. as gave the latter power to make a good tenant to the *precipe*. *Held also*, that the recovery was legal, and under the conveyances and proceedings a good title in fee simple was vested in W. H.

In ejectment.

The cause was tried at the Gloucester Circuit, and a verdict rendered for the defendant. On the coming in of the *postea* the plaintiff moved to set aside the verdict and for a new trial.

Argued at June Term, 1860, before Justices OGDEN, HAINES, and VAN DYKE.

*L. Q. C. Elmer* and *W. L. Dayton*, for the plaintiff, insisted that the common recovery, under which the defendant claimed title, was void for want of a good tenant to the *precipe ;* that the half of the estate claimed by the plaintiff in this suit was never surrendered by Holmes, to whom it had been conveyed, and therefore Charles Ewing, the tenant to the *precipe*, took no title to that share.

[The brief of plaintiff's counsel has not been furnished to the reporter.]

*Carpenter* and *Browning*, for defendant.

The land in controversy is 189½ acres in Woolwich, part of 247 acres devised by Henry Richman in fee tail to his son, Isaac Richman. Isaac Richman, the tenant in tail in possession, made a contract to convey the whole tract of 247 acres to William Mulford and Isaac Howey ; and on the 3d day of June, 1799, by deed of bargain and sale, (with covenants of warranty and for further assurance) pur-

VOL. V.                                    C

porting to grant the same in fee, he conveyed the land to Mulford and Howey. This deed describes the land as in the tenure and occupation of William Mulford. As this deed could only convey a base fee, Isaac Richman, at the same time, executed a bond to Mulford and Howey conditioned that he would suffer " a *common recovery,* whereby the entailment of said plantation should be broken, and a good title in fee simple vested in Mulford and Howey."

When this contract was made, it was one authorized by the law of the land and one upon which Mulford and Howey were entitled to rely. But only nine days afterwards fines and recoveries were abolished in New Jersey. *Act June 12th,* 1799, *Pat.* 411, *Rev. Statutes* 999. In consequence Isaac Richman could not suffer a common recovery until subsequently specially authorized by a special act of the legislature, passed March 8th, 1806, (*Pamph. Laws* 9.)

Under the authority of this act, a common recovery was suffered in the Supreme Court of New Jersey, at September Term, 1806, under the advice of John Lawrence, John Moore White, and, perhaps, of Charles Ewing and Joseph McIlvaine, whose names are also found in the proceedings— the last common recovery suffered in this state.

The defendant is in possession under those who hold by virtue of these proceedings. The plaintiff claims *per formam doni,* being the son of Isaac Richman, and alleges that the recovery was not well suffered, the objection taken being that there was no good tenant to the *precipe.*

No objection is taken to the validity of the special act, and it may be assumed that none can be sufficiently made. It is an act not to enable one person to take the property of another or to invalidate any contract. It is a law valid on sound and equitable principles, one made to enable parties to carry a lawful contract into effect.

The objection made to the validity of the recovery is founded on the allegation that, as to the 189 acres in question, the title at the time of the recovery was in William

Holmes; that no reconveyance appears from Holmes to Mulford, and that therefore nothing passed by the reconveyance of Mulford and Howey to Isaac Richman in August, 1806; that Isaac Richman could not make a good tenant to the *precipe*, and that, therefore, the recovery is void.

1. A common recovery by consent was a mere mode of assurance, to be treated as such, and entitled to every presumption of law in its favor. 2 *B. C.* 358, 360; *Lord Cromwell's case,* 2 *Rep.* 74; *Sergeant, J.,* 1 *Wharton's Rep.* 151; *Willes, J., Willes' Rep.* 449; 3 *Bac. Abr.* 684–5, " *Fines and Recoveries,*" *C.*

Thus tenancies for life have been presumed surrendered under circumstances consistent with such presumption, and when, as in this case, possession has accompanied a recovery for a long time. 3 *Bac. Abr.* 686, (*Lond. ed.* 1832); *Green* v. *Fronde,* 3 *Keb.* 310; *Ventr.* 257, *S. C.;* 18 *Vin.* 226; 2 *Wms. Saund.* 42, *d; Warren* v. *Greenville,* 2 *Strange* 1129; *Goodtitle* v. *Chandos,* 2 *Burr.* 1065, 1069.

The circumstances here are consistent with the presumption, and possession for more than fifty years has accompanied the recovery.

As to other cases in which courts apply the doctrine of presumption to support the intention of parties and in aid of right, see *Den d. Obert* v. *Bodine, Spenc.* 394, and cases; *Doe* v. *M. of Cleveland,* 9 *B. & C.* 864; *Den* v. *Mulford,* 1 *Zab.* 506; 1 *Greenl. Ev.,* § 20.

2. But the conveyance by Mulford to Holmes was not such a conveyance, being merely of a base fee, as worked a discontinuance. There was still such an interest as that Isaac Richman could enter, and must be presumed to have entered, and could then make a good tenant to the *precipe. Litt.,* § 606; *Doe d. Odiorne* v. *Whitenack,* 2 *Burr.* 717.

Rather than a common recovery shall fail for want of tenant to the *precipe,* the court will intend that he was in by disseisin. *Lincoln College case,* 3 *Co.* 58, *b,* cited and approved in *Goodtitle* v. *Chandos,* 2 *Burr.* 1069.

In Pennsylvania the same questions have been raised as in this case, and the court, upon these principles, have sustained the recovery. *Lessee of Sharp* v. *Petit*, 4 *Yeates* 413; *Sharp* v. *Thompson*, 1 *Whart.* 139.

3. But under the act of March 8th, 1806, the recovery was well suffered, for after a recital of the reasons for passing the act, it expressly authorizes Isaac Richman to suffer the recovery, and therefore to make a tenant to the *precipe.*

4. But again, as to this special act of 1806, it expressly authorizes Isaac Richman to suffer this recovery in the manner common recoveries were suffered prior to the passing of the act to abolish fines and recoveries.

The act to abolish fines and recoveries was passed January 12th, 1799. On the 13th of January, 1799, by the act relative to statutes, (§ 4, *Pat.* 436,) it was enacted that from and after the passing of that act no statute of England should be held valid in this state. Prior, therefore, to the 13th of January, 1799, the English statutes relative to common recoveries, and among them the statute of 14 *Geo.* 2, *c.* 20, were in force in this state.

Now the statute of 14 *Geo.* 2, *c.* 20, was passed to remedy a difficulty which frequently occurred under the rule, that a freehold in actual possession was necessary to enable one to make a good tenant to the *precipe.*

This difficulty arose in two cases—1. When lands are let out by tenant in tail on lease for years or conveyance for life (this case.)

2. When there was an estate for life prior to the estate of inheritance, the statute of 14 *Geo.* 2, *c.* 20, remedied the first case, but excepted the second out of its provisions. 5 *Cruise* 340, for the statute; 2 *Wms. Saund.* 42, *note;* 3 *Bac. Abr.* 687, (*Lond. ed.* 1832,) " *Fines,*" &c., *C.*

Now the estate conveyed to Mulford and Howey, and by Mulford after partition to Holmes, was at most but an estate for life, and comes within the first class. It was not estate *prior* to the estate tail.

The conveyance worked no discontinuance ; by his deed he conveyed only the interest which he had in the premises, and which was an estate for his own life only. He conveyed, then, in fact an estate for life only, and the defect which might possibly have existed was cured by the statute 14 *Geo.* 1, *c.* 20.

The opinion of the court was delivered by

HAINES, J.   Henry Richman, by his last will and testament, dated January 6th, 1779, and proved 15th September, 1787, devised a certain plantation to his son, Isaac Richman, " during his life, and then to the heirs of his body forever."

On the 3d June, 1799, Isaac Richman, having attained his majority, conveyed the premises so devised to Isaac Howey and William Mulford by deed of bargain and sale, with covenants of warranty and covenant for further assurance. With the deed of conveyance he also delivered to the grantees his bond, in the penal sum of one thousand pounds, conditioned to be void if he should suffer a common recovery, whereby the entailment of the said plantation should be broken, and a good title in fee simple be vested in said Howey and Mulford.

The land so conveyed to Howey and Mulford was subsequently divided between them, and mutual releases executed. Then, on the 29th April, 1806, Mulford conveyed that part of the premises which he held in severalty, to William Holmes, from whom the title of the landlord of the defendant is said to be deduced.

On the 12th June, 1799, nine days after the execution of the deed by Isaac Richman to Howey and Mulford, the act of the legislature was passed to abolish fines and recoveries. But on the 8th June, 1806, a special act was passed to authorize Isaac Richman to suffer a common recovery of the plantation devised to him, in the manner common recoveries were suffered prior to the passing of the act to abolish them.

Isaac Richman then took measures to suffer a common recovery, and for that purpose executed a deed tripartite, with John Moore White as the recoverer, and Charles Ewing as the tenant to the *precipe*, reciting that Howey and Mulford had reconveyed the whole premises to him, Isaac Richman. The judgment of recovery was rendered on the 2d September, 1806, and Isaac Richman, on the 13th September, in the same year, executed to Mulford and Howey a deed conveying and further assuring to them the whole premises in fee simple.

Isaac Richman died on 3d October, 1852, leaving his only child and heir-at-law, John B. Richman, the plaintiff in this action, who claims under the devise as the heir of the tenant in tail.

To the action of ejectment for that part of the premises which was conveyed to William Holmes the defence is the common recovery, by which it is insisted that the entailment of the estate was barred, and a fee simple created in Isaac Richman.

In reply, it is urged that the common recovery, so far as it relates to the premises so conveyed to Holmes, is void for want of a proper tenant to the *precipe*, and the whole case turns upon the validity or invalidity of such recovery.

No question is raised as to the validity of the special act of June, 1806, authorizing the common recovery to be made, as if the act abolishing fines and recoveries had not been passed.

By the 22d section of the first constitution of this state, it is provided that the common law of England, as well as so much of the statute law as had been theretofore practised here, should remain in force until it should be altered by a future law of the legislature. No such law of the legislature was passed until 13th of June, 1799, (*Pat.* 436, § 4,) when it was enacted that no statute or act of the parliament of England or of Great Britain should thereafter have force or authority in this state.

Prior to that time common recoveries were suffered according to the common law of England and acts of parliament. The special act in favor of Isaac Richman authorized him to suffer the recovery, as he could have done before the 12th of June, 1799, when fines and recoveries were abolished, and the proceeding must be tested by the rules of the law of England in force at that time.

By those rules, one of the indispensable circumstances to the suffering of a common recovery was, that the person against whom the writ was brought should be the actual tenant of the freehold, either at the time the writ issued out or before the judgment given.

A recovery being a real action carried on through all its forms, it is absolutely necessary that the tenant to the *precipe*, or person against whom the writ of entry is brought, should have an estate of freehold in possession, either by right or by wrong, in the lands demanded by the writ, because if he has not the freehold, it would not be in his power to restore the lands as the writ directs. And in common recoveries there is the additional reason, that as the demandant can recover nothing against the tenant unless he has the freehold, so the tenant can have no recompense in value against the vouchee for what he has lost; for until the demandant sues out execution against the tenant the tenant can have no execution against the vouchee, and if the tenant has nothing in the land, no execution can be sued out against him, nor can any recovery in value be had over; consequently there will be no recompense to bind him, and the recovery will be no bar. 5 *Cruise's Dig., title* 36, " *Recovery*," c. 2, § 10.

In section 19th of same title and chapter, the author says, " that as it is absolutely necessary that the tenant to the *precipe* should have an estate of freehold, it follows that those who have not an estate of freehold cannot suffer a recovery, because they cannot convey a freehold to the person against whom the writ is to be brought.

In *Downer* v. *Parkhurst*, 3 *Atk.* 135, a fine was levied by

a tenant for years and a remainder-man in tail to make a tenant to the *precipe*, and it was determined that the recovery was void, because none of the parties to the fine had an estate of freehold in possession in the lands.

In *Taylor, ex dem. Atkyns,* v. *Horde,* 1 *Burrows' R.* 60, the objection to the recovery was, that Lady Atkyns, the widow of Sir Robert, the father, had an estate for life in the premises, and did not join, by surrender or otherwise, in any conveyance of the freehold to the tenant against whom the *precipe* was brought. Lord Mansfield, who delivered the resolution of the court in a very learned opinion, held that in every light and upon every ground of law the recovery was bad.

The same principle was subsequently affirmed in *Goodtitle, ex dem. Bridges,* v. *Duke of Chandos,* 2 *Burrows' R.* 1065–72, and it is maintained in the elementary books and annotations of reporters.

Sergeant Williams, in note 7, on page 42 of 2 *Saunders' R.,* and on the authority of Pigott, says, that though they are fictitious proceedings and amicable actions, yet it is necessary that the *actores fabulæ,* as they are sometimes termed, should be the same as in adversary suits, and the writ must be brought against such person only as would be an unexceptionable tenant in an adversary action.

The form in 6 *Wood's Conveyancing* 104, which the entry in this case is said to have followed, contemplates the same thing.

The question then is, was Charles Ewing, at the time of suing out the *precipe* or afterwards, a proper tenant of the part of the premises conveyed to Holmes.

If the conveyances from Richman to Howey and Mulford, and from Mulford to Holmes, created an independent outstanding estate, it was necessary that the estate so created should have been surrendered to enable Richman to constitute a proper tenant.

A deed of bargain and sale, although purporting to convey a fee simple, yet actually conveys only the estate

of the bargainor. *Den* v. *Crawford*, 3 *Halst.* 108 ; 4 *Cruise's Dig.* 123 ; 1 *Bac. Abr.* 466.

A release or deed of bargain and sale by a tenant in tail gives a base fee voidable by the issue in tail. *Goodright* v. *Mead et al.*, 3 *Burr.* 1705 ; *Mackel* v. *Clark*, 2 *Salk.* 619, by virtue of which the releasee or bargainee has an estate for the life of the tenant in tail.

But such instrument is not a lease for life, and is not within the provision of the statute 14 *George* 1, *c.* 20, by the first section of which it was rendered unnecessary to surrender leases for life or lives, or to have the concurrence of the lessee to the constituting of a tenant to the *precipe;* that relates to intermediate estates, not of inheritance and not to the whole interest of the tenant in tail, which, although a base fee, is an estate of inheritance. 2 *Bl.* 109 ; *Seymour's case*, 10 *Coke* 95 and 96, given also in 2 *Burrows* 713 and in *Cruise*, fully sustains this view of the statute 14 *Geo.* 1, *c.* 20. In that case Cheney, the tenant in tail, had sold the premises to Higham and his heirs, by deed of bargain and sale duly enrolled, which, by force of the statute, *Henry* 8, *c.* 16, was sufficient conveyance of all the interest of the bargainor, by virtue of which deed Higham entered, and was seized of the premises accordingly. A fine, with proclamations levied a year afterwards, was held not to bar the right of the heir in tail.

The question then arises, whether Richman's deed to Howey and Mulford created a distinct, outstanding estate, so as to require a surrender.

In construing the transaction the intention of the parties expressed in the deeds and record is to be the guide, and that intention is to be gathered from the whole proceeding.

Referring, then, to the deed from Richman to Howey and Mulford, we find a recital of the devise from Henry Richman to Isaac Richman, by which the estate tail was created, and that it purports to create a fee simple.

It contains, also, a covenant of warranty and covenant

of further assurance. Connected with this, and as a part of the same transaction, is the bond, in the penalty of one thousand pounds, with a condition that Richman should suffer a common recovery, whereby the entailment of the premises should be broken, and a good title in fee simple vested in Howey and Mulford.

What was the intention of the parties in making and receiving the deed of bargain and sale ? Was it to create thereby merely a base fee, an estate only for the life of the tenant in tail, with the right to enforce the covenants of warranty and further assurance against his estate ? or was it not rather to contract for the securing to Howey and Mulford a perfect title in fee simple, and to use this deed as part of the means of so doing ?

At the time of making the will of Henry Richman and the execution of the deed by Isaac Richman, common recoveries were the usual and a favorite mode of conveyance. They were regarded as common assurances and as a proper mode of barring entails. Richman, before the execution of the deed, had a right, by the then existing law, to suffer a recovery, and thereby to procure a fee simple in the premises.

He had a right to contract with another to procure for him a full title, and by this deed he did contract with Howey and Mulford to convey to them such a title. That deed conveyed a present interest, but it also provided for a larger estate by the further assurance. That larger estate could be obtained only by a fine levied or common recovery suffered. The bond expressed the mode by which they meant it to be done.

The deed, therefore, and the subsequent proceedings in suffering the recovery are to be regarded as parts of the same transaction and consistent with each other.

It would be anomalous, indeed, if a party could make a lawful contract for the conveyance of an estate, and yet defeat his own object by the contract itself; but such would be the case if the deed to Howey and Mulford

divested Richman of the power to make a good tenant to the *precipe.*

The length of time that elapsed between the execution of the deed and the suffering of the recovery is no objection to this view of the case. The act abolishing fines and recoveries, which was passed within nine days after the execution of the deed, prevented any further action in fulfilling the contract until the act of 1806 was passed, authorizing it to be done.

That act and the recitals in its preamble show that the legislature regarded the deed and the bond only as a covenant to procure to Howey and Mulford a good and perfect title to the premises. No provision is there made for a surrender; but authority was given to Richman to suffer a common recovery in the same manner that it could have been suffered prior to the act abolishing fines and recoveries.

The fair construction to be given to the deed is, that it was meant only as a deed to lead the uses, to express the intention to make a further assurance of the premises to the use of the bargainees, and such construction is sustained by authority.

In *Doe, ex dem. Odiorne,* v. *Whitehead,* 2 *Burrows' R.* 704, Timothy Stoughton, being tenant in tail, previously to his marriage, and in consideration thereof, by indentures of lease and release, granted and released the premises to trustees for certain uses, and therein covenanted to levy a fine with proclamations, which should inure to the intents and purposes, and for the estates in the indenture of release mentioned. After the marriage he levied the fine,[t] according to the covenant. In an action brought by the heir in tail, the release and the fine were held to be one assurance, and to operate as such, and Lord Mansfield remarked, " It would be a strange thing that the form of a conveyance should destroy the very intent of it, and that the fine itself should destroy the estate of the tenant for life by occasioning the forfeiture of it. Instead of this

all the preceding transaction was executory, and the operation is only as a declaration of the uses of the fine. It is like a case of a tenant to the *precipe*, who is considered merely as an instrument, and not as the strict real owner of the land. This release is but a deed to lead the uses of the fine." And he distinguished between that and Seymour's case, which he said went upon quite different grounds. Cheney sold to Higham by indenture of bargain and sale enrolled, by force of which Higham entered and was seized accordingly. Afterwards, and nearly a year after the bargain and sale, Cheney levied the fine to Higham and his heirs with general warranty, so that the bargain and sale were totally unconnected with the fine; and it does not appear that at the time of executing the deed of bargain and sale there was any intention of levying a fine or of barring the entailment, whereas in the case before him the whole was one assurance.

This was a case of a fine; but Lord Mansfield called that a blunder, and said, in strict regular form it should have been a common recovery.

In *Cromwell's case*, 2 *Rep.* 69, cited in 5 *Cruise's Dig.* 218, where the heir claimed a right of entry for condition broken, it was held that if the fine had been levied for the purpose of corroborating the conveyance by which the condition was created it would not have destroyed the condition, for in that case the fine and conveyance would be construed together, and would operate as one assurance.

The same principle is held in the *Countess of Rutland's case*, 5 *Rep.* 25, cited in 4 *Cruise* 152.

If the indenture in this case was but a deed to lead the uses, and the recovery was in pursuance of it, it would seem that there was no necessity of a surrender by the covenantees, and the recovery would vest in them the fee simple of the land discharged of the entailment. And their title perfected would enure to the use and benefit of Holmes.

Again, it is insisted by the defendant that, if a surrender of the estate created by the deeds to Howey and Mulford and to Holmes was requisite to constitute a proper tenant to the *precipe*, that such a surrender is to be presumed.

Common recovery, as a mode of assurance, was not only a creature, but a favorite of the courts of England. Devised by the ecclesiastics to evade the statute of mortmain, it was afterwards adopted to bar estates tail.

The statute *de donis conditionalibus*, passed in the 12th year of Edward I., A. D. 1275, requiring the will of the donor to be observed, and out of which grew, by construction, estates in fee tail and reversion, caused many real or imaginary evils, by restraining the alienations of estates, thereby, as was supposed, prejudicing creditors, encouraging disobedience of children, and treason against the king. But the house of lords, sympathizing with the landed interests, persistently rejected every effort to repeal it. Having endured these evils for nearly two hundred years, in the 12th year of Edward IV., A. D. 1472, by the countenance of that monarch, the judges declared in *Taltamim's case, Bro. Abr.* 30, title " *Recovery in Value*," 19, title " *Tail*," 36, that a common recovery was a sufficient bar of estates tail.

Since then, and until abolished by our statute, common recoveries were not only a usual mode of assurance of lands, but an effective and ready method of transferring an estate tail into a fee simple in the tenant in tail ; and so much were they favored that the courts sometimes presumed, in consequence of particular circumstances, that the tenant for life had surrendered his estate, though no surrender was actually proved ; and in *Green* v. *Froud*, 1 *Vent.* 257, reported also in 1 *Mod.* 117, by name of *Green* v. *Proude*, where part of the land had been leased for life, and then the recovery was by the person in reversion, so that there was no tenant to the *precipe*, a surrender was presumed from the

length of time (forty years) during which the possession had gone with the recovery. And in *Goodtitle, ex dem. Bridges,* v. *Duke of Chandos,* 2 *Burrows' R.* 1060, Lord Mansfield declared that, when a person had a power to suffer a recovery, and thereby bar his estate tail *omnia præsumunter rite et solemniter acta,* until the contrary appears; and that it was reasonable that it should be so, but if the contrary appear, then there is an end to the presumption, as was the case in the Earl of Suffolk's recovery, in Easter Term, 1747, *Keen, on demise of the Earl of Portsmouth,* v. *Earl of Effingham,* 2 *Strange* 1267, where the contrary did appear, and the presumption was destroyed by the deeds actually produced, and which were clearly wrong. In the same case, 1065, he added " that there was no ground for a presumption of a surrender by the tenant for life, but that there were two particular reasons against it. One is, that there does not appear to have been any intention of the remainder-man in tail to suffer a recovery of these particular lands; the other, that there was no possession under the recovery."

So in Dormer *v.* Parkhurst, before referred to, where the tenant to the *precipe* was attempted to be made by a fine void for want of proper parties, the presumption was overcome.

But in the *Lincoln College case,* 3 *Co.* 58, cited in 2 *Burr.* 1069, where a common recovery was had against a remainder-man in tail in the lifetime of his mother, who was tenant for life, and she was expressly alleged to be *ad tunc tenens liberi tenementi,* and it could not be intended that she had surrendered her estate, or that he had entered for a forfeiture, yet even there, rather than the common recovery should be taken to be void for want of a tenant to the *precipe,* the court intended that he was in by disseisin.

In this case it is evident that Isaac Richman, at the time he executed the deed to Howey and Mulford, had the power to suffer a recovery, and that he intended to do so.

For that purpose the bargainees surrendered to him the estate by reconveyance, but it does not appear that Holmes surrendered by any reconveyance, or that after the recovery any further conveyance was made to him. If the facts ended here it would seem that there was an attempt to surrender the estates to Richman, and that they failed to do so for want of proper parties, it nowhere appearing that Holmes united in the surrender.

But it further appears, by the recitals of the deed from Richman to Howley and Mulford, that the premises thereby conveyed were then in the tenure and occupation of Mulford, and in the tripartite deed, by which the tenant to the *precipe* was intended to be made, it is again recited that Mulford was then in the tenure of the same premises.

The word *tenure* is one of very extensive signification; it may import a mere possession, and may include every holding of an inheritance. In the first deed it was used as a synonym of the word occupation. The recitals show that it could not have been otherwise. And in the second deed reconveying the premises it may have been used in the same sense; but it at least recites a possession and actual occupation by Mulford. How that occupation was obtained does not appear, whether rightfully or wrongfully, it is sufficient after a lapse of more than forty years to raise the presumption of a surrender by Holmes, a presumption that Mulford, in connection with his tenure, had such an interest in the freehold as enabled him to make such surrender to Richman as would give him power to make a good tenant to the *precipe*.

The evidence that Holmes moved on to the farm conveyed to him by Mulford in March, 1807, corroborates the presumption, as that was after the recovery. The occupation by him to the time of his death, in 1822, and by others under him to the commencement of this action, is presumptive of a conveyance or further assurance to him.

Under all the circumstances of the case, I think there

is ground to presume that there was a good tenant to the *precipe,* and that the recovery was legally suffered, and that judgment upon the verdict should be entered for the defendant.

CITED *in Norris* v. *Thomson's Ex'rs,* 4 *C. E. Gr.* 316.